Betty Jean McCOY, as natural tutrix and mother of the minor child, Morace Lyndell Madden

v.

James THORN, Gary Lavon Valentine, Berle Winston, William R. Thornton, B. J. McHalffey, B. W. Spencer, Warner Barteet, Jack Huckabay, Cortez Bridges, William P. Jolly, Jr., Bossier City, Louisiana, and Early American Insurance Co.

Civ. A. No. 77–0915.

United States District Court, W. D. Louisiana, Shreveport Division.

June 1, 1978.

N. Graves Thomas, Shreveport, La., for plaintiff.

Gordon E. Rountree, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendants.

### MEMORANDUM RULING

STAGG, District Judge.

Betty Jean McCoy filed this action against James Thorn and the city of Bossier City, Louisiana, contending that Thorn

physically abused her son Morace Lyndell Madden in violation of Madden's constitutional rights. The complaint alleges state and federal law claims against Thorn and the City. Mrs. McCoy claims that the City is liable, as Thorn's employer, directly under the Fourteenth Amendment to the United States Constitution and under state law.

■ Bossier City has moved to dismiss the action against it because the Court has no subject matter jurisdiction over the claims. If there is no independent basis for jurisdiction over the *federal* claim against the City, the Court has no jurisdiction over the *state* claim against the City. *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). If the claim directly under the Fourteenth Amendment is not viable as a matter of law, that is, if no set of facts can establish a city's liability under the Fourteenth Amendment as an employer, then there is no independent federal jurisdiction because there is no federal claim. The action presents the question whether there is an action for damages directly under the Fourteenth Amendment against a municipality solely as the employer of its police officers.

■ Due to the delegation of powers to the branches of government under the American system of constitutional government, and because of implications of applicable decisions by the Supreme Court of the United States, the Court has determined that there is no action for damages against a municipality solely as the employer of its police officers directly under the Fourteenth Amendment. The motion to dismiss the claims of Bossier City for lack of jurisdiction must be GRANTED.

Article I, Section I of the United States Constitution states:

"All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

Article III, Section I provides:

"The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

Plaintiff urges the Court to *imply,* or create, a remedy against the City under the Fourteenth Amendment pursuant to the doctrine *respondeat superior* because Congress has failed to enact such a remedy. This Court, *any* court, is without the power to create such a constitutional remedy.

■ In the American constitutional system, courts apply the law as it exists; they do not create constitutional remedies. Courts state what the law is, not what it shall be from the date of the decision forward. Courts *interpret* the Constitution; they do not *draft* it. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

The people, through the Constitution, wisely delegated the legislative power to the Congress and the judicial power to the courts. Remedies and rights are created by the people through their elected representatives. Those representatives must account to the people in periodic elections. If they fail to satisfy the will of the people, the people may vote them out of office. Judges, on the other hand, receive lifetime appointments. They meet the scrutiny of the electorate only during the selection process. It is for legislators, not judges, to decide important matters of public policy. It is for judges, independently and without fear of political reprisal, to interpret the law after the people, through the Constitution or through their elected representatives, have decided what public policy should be.

■ Once the judiciary embarks on a course of policy determination beyond the mere interpretation of law, it erodes the democratic process. Independent policy determination by a court violates the principle, embodied in the Constitution and proclaimed in the Declaration of Independence, that a political sovereign derives its power solely from the people. Judicial policy determinations that *create* constitutional remedies remove the sovereign power from the people, through their elected representatives, and place it in the hands of a select

few who are politically unaccountable for their decisions.

The people ratified the Fourteenth Amendment on July 9, 1868. The amendment either embodied a direct cause of action for damages against a municipality based on the doctrine of *respondeat superior* on July 9, 1868, or it did not. If it did, then the courts have failed either to address it or to recognize it. If it did not, no court today can create such an action.

The Fourteenth Amendment granted to *Congress* the power to enforce the amendment. U.S.Const. amend. XIV, § 5. Had Congress failed to pass *any* legislation to enforce the amendment, then a court might be empowered to imply one in order to carry out the will of the people in creating a right. Under such circumstances the court would act equitably to make the right meaningful, a right without a remedy being tantamount to no right at all. However, Congress has provided both civil and criminal, private and public remedies to redress violations of rights guaranteed by the Fourteenth Amendment. It has chosen not to create liability in municipalities based on the doctrine *respondeat superior. See City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The existing remedies being adequate to make Fourteenth Amendment rights meaningful, the Court lacks power to hear a claim hoping to imply an additional remedy for an alleged violation of those rights.

The decisions of the Supreme Court of the United States in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), support the principle that Congress has determined the remedies for violations of Fourteenth Amendment rights. Moreover, the Court is not faced with recognizing a remedy to make a con-stitutional right meaningful, the situation the Supreme Court faced and resolved by recognizing a remedy under the Fourth Amendment in *Bivens v. Six Unnamed Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

In *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), Justice Douglas, writing for the Court, determined that a municipality is not a "person" within the meaning of 42 U.S.C. § 1983. The plaintiff had asserted jurisdiction under the civil rights jurisdiction statute, 28 U.S.C. § 1343, *and* under the general federal question jurisdiction statute, 28 U.S.C. § 1331(a). In discussing the legislative history of § 1983, Justice Douglas noted that Congress had declined to add a municipal liability amendment offered by Senator Sherman of Ohio because the House of Representatives had determined that Congress had no constitutional power to grant a damage remedy against county and town organizations. 365 U.S. at 190, 81 S.Ct. at 485–86. The Court escaped ruling on the question of Congressional power by deciding that Congress had not attempted to exercise that power:

> "Nor do we reach the constitutional question whether Congress has the power to make municipalities liable for acts of its officers that violate the civil rights of individuals." 365 U.S. at 191, 81 S.Ct. at 486.

Clearly *Congress* has a superior power to the courts to create remedies under the Fourteenth Amendment. If Congress perhaps lacks the power to hold municipalities liable for acts of their officers, *a fortiori* the courts have questionable grounds to do so.

*Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), extended *Monroe's* holding to counties and to actions under 42 U.S.C. § 1988. In doing so, the Court stated:

> "There is yet another reason why petitioners' reliance upon § 1988 must fail. The statute expressly limits the authority granted federal courts to look to the common law, as modified by state law, to instances in which that law 'is not incon-

sistent with the Constitution and laws of the United States.' Yet if we were to look to California law imposing vicarious liability upon municipalities, as petitioners would have us do, the result would effectively be to subject the County to federal court suit on a federal civil rights claim. Such a result would seem to be less than consistent with this Court's prior holding in *Monroe v. Pape,* 365 U.S. at 187–191, 81 S.Ct. at 484–486, that Congress did not intend to render municipal corporations liable to federal civil rights claims under § 1983." 411 U.S. at 706, 93 S.Ct. at 1794.

Obviously, if an independent direct action against a municipality for money damages occasioned by violations of federal civil rights by municipal officers existed under the Fourteenth Amendment, § 1983 would be an additional remedy and the extension of § 1988 would not have been inconsistent with Constitution and laws of the United States. *Moor* implies that there could be no action at law under the Fourteenth Amendment against a municipality for violations of civil rights by its law enforcement officers.

*City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), extended *Monroe's* holding by deciding that a city is not a person for purposes of equitable relief under 42 U.S.C. § 1983. The Supreme Court remanded the case so that the district court could consider whether independent federal jurisdiction might be available directly under the Fourteenth Amendment.

There is no clash between *City of Kenosha* and this Court's ruling in the instant case. Under the common law of England, the legislature and the law courts did not provide equitable remedies, the chancery courts did. If the legislature or the law courts created a right for which there was an inadequate remedy at law, chancery courts granted injunctive relief. The chancery courts, however, could not improvise a money damage remedy when the legislature and the law courts had omitted one. The implication in *City of Kenosha* that a person may seek injunctive relief against a municipality directly under the Fourteenth Amendment is consistent with the traditional role of courts of equity. The implication does not impel a conclusion that a direct action against a municipality for money damages exists under the Fourteenth Amendment.

■ In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court avoided the question whether a municipality could be liable because of *respondeat superior* directly under the Fourteenth Amendment. 427 U.S. at 4, n. 3, 96 S.Ct. at 2415 n. 3. Nonetheless, the Court dismissed the state law claims against the county involved because there was no independent basis for a federal claim against the county. As federal courts are bound to grant the relief to which a party is entitled, even if it is based on a legal theory he did not plead, the dismissal of the county in *Aldinger* implies without deciding that there is no action under the Fourteenth Amendment against a municipality because of *respondeat superior.* See generally 5 Wright & Miller, Federal Practice and Procedure §§ 1216, 1219 (1969).

A holding that a city is liable for civil rights violations of its officers under the Fourteenth Amendment would render *Monroe, Moor, City of Kenosha* and *Aldinger* mere examples of the pitfalls of technical common law pleading. They would become meaningless, being dependent upon the legal citations contained in a complaint. In short, it would overrule them *sub silentio.*

*Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), provides no basis for this Court to recognize a direct action under the Fourteenth Amendment against the City for acts of its officers. In that case, there was no federal court remedy against federal officers for violations of federal civil rights guaranteed by the Fourth Amendment. Because the lack of a remedy destroys a right, the Supreme Court determined that the situation made Fourth Amendment rights meaningless as a practical matter and recognized a direct action for damages by the private plaintiff against the federal

officers. The Court did *not* recognize a remedy against the officers' employer. In addition, Congress has provided a federal court remedy for violations of federal civil rights by municipal officers in 42 U.S.C. § 1983. The plaintiff's Fourteenth Amendment rights are not meaningless as a practical matter.

Finally, *Reeves v. City of Jackson,* 532 F.2d 491 (5th Cir. 1976), does not compel this Court to recognize the action asserted by plaintiff in this case. First, *Reeves* was decided on June 1, 1976, 23 days before the Supreme Court's decision in *Aldinger.* The United States Court of Appeals for the Fifth Circuit did not have the benefit of the Supreme Court's rationale in *Aldinger* when it decided *Reeves.* Moreover, if *Reeves* recognizes a direct action against a city under the Fourteenth Amendment, it effectively would overrule three decisions of the United States Supreme Court. It would render them meaningless, at the least.

No set of facts may be alleged or proven that would hold Bossier City liable as the employer of police officers who may have violated any person's federal civil rights. The inclusion of an action under the Fourteenth Amendment is a mere sham, insufficient to support jurisdiction under 28 U.S.C. § 1331(a). As there is no independent basis for federal jurisdiction, there is no pendent jurisdiction over the state law claims against the City. *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). The City must be dismissed as a party to this action.